UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JOYCE WILSON,

                              Plaintiff,          **MEMORANDUM OF**
                                                  **DECISION AND ORDER**
          -against-                               14-cv-5884(ADS)(GRB)

SOUTHAMPTON HOSPITAL,

                              Defendant.
---------------------------------------------------------------x

**APPEARANCES:**

**CHRISTINE ALEXANDRA RODRIGUEZ, ESQ.**
*Attorney for the Plaintiff*
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorneys for the Defendant*
521 Fifth Avenue
New York, NY 10175
          By:   Mary Ellen Donnelly, Esq.
                Eric David Distelburger, Esq., Of Counsel

**SPATT, District Judge:**

On October 7, 2014, the Plaintiff Joyce Wilson ("Wilson" or the "Plaintiff")

commenced this action against her former employer, the Defendant Southampton

Hospital (the "Hospital' or the "Defendant").

On December 4, 2014, the Plaintiff filed an Amended Complaint, alleging as

follows: (i) the Hospital discriminated against her on the basis of a disability in

violation of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (the "Rehabilitation Act"),

the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the New

York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"); (ii) the Hospital discriminated against her on the basis of her gender and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the NYSHRL; (iii) the Hospital retaliated against her for lodging complaints of unfair treatment in violation of the Rehabilitation Act, the ADA, and the NYSHRL; and (iv) the Hospital breached an enforceable contract with the Plaintiff, in violation of New York common law.

On December 17, 2014, the Hospital moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the Amended Complaint.

The Plaintiff opposed the motion to dismiss, and in doing so, withdrew her gender and sexual orientation claims under Title VII and the NYSHRL. Also, the Plaintiff cross-moved for leave to file a Second Amended Complaint that asserts causes of action only for (i) discrimination on the basis of a disability and retaliation in violation of the Rehabilitation Act, the ADA, and the NYSHRL; and (ii) breach of contract.

For the reasons set forth in this opinion, the Hospital's motion to dismiss is granted in part and denied in part. In addition, the Plaintiff's cross-motion to amend is granted to the limited extent set forth below.

## I.     Factual Background

Except as otherwise noted, the following facts are drawn from the Amended Complaint and are construed in the Plaintiff's favor.

From approximately 1992 to July 1, 2013, Wilson was employed as a registered nurse by the Defendant. Until October 2012, she had been assigned to the Emergency Department. In May 2013, she was reassigned to the Admitting and Discharge Department.

The Defendant is a 125-bed private hospital located at 240 Meeting House Lane in Southampton, New York. The Hospital employs more than 400 people. The Plaintiff alleges that the Hospital is a Medicaid and Medicare provider, and receives other federal financial assistance to provide services to the public.

## A.      The Plaintiff's Medical Leave

On or about October 5, 2012, the Plaintiff began a disability leave from the Hospital. She alleges that she had developed a dependency on prescription drugs and a substance abuse disorder, which caused her to enter a rehabilitation program administered by the New York State Education Department's Professional Assistance Program ("NYSPAP").

The Plaintiff alleges that, while in the rehabilitation program, she also participated in the New York State Nurses Association Statewide Peer Assistance Program, which provides support and advocacy for nurses with substance abuse problems.

In connection with her rehabilitation, the Plaintiff surrendered her nursing license. However, she alleges that, while participating in the program, she was able to preserve her nursing license for future reinstatement.

Wilson alleges that she successfully completed her rehabilitation program and tested negative on all random drug tests administered to her while she was out on leave.

## B.   The Reinstatement of the Plaintiff's Nursing License

On January 28, 2013, the Plaintiff's nursing license was conditionally reinstated by the NYSPAP.  In this regard, she alleges that she was "cleared to return to work as a registered nurse."  Apparently, Wilson's credentials to practice nursing were restored, but the Hospital had not yet approved her return to work.

Certain conditions were attached to the conditional reinstatement of Wilson's nursing license.  Allegedly, these included "continued counseling, monitoring and random drug testing."  She was also required to work a set schedule with no access to narcotics.

The Plaintiff alleges that, at the time that her license was conditionally reinstated, there existed vacancies for the registered nursing staff in the Hospital. Wilson alleges that she could have filled one of these vacancies while complying with the applicable conditions of her reinstatement.

However, the Hospital's "employee health nurse" John Dyer, acting under the direction of Chief Nursing Officer ("CNO") Patricia Darcy, allegedly made repeated requests to Wilson's treating physician to extend her period of disability, thus delaying her return to work.

According to the Plaintiff, CNO Darcy acknowledged making these requests to her physician, but claimed that they were meant to extend the Plaintiff's benefits

until such time as the Hospital could find a position for her. Wilson disputes this rationale, contending that there were a number of suitable positions available for which the Hospital hired *per diem* nurses, rather than allow the Plaintiff to return to work.

At an unspecified date after January 28, 2013, CNO Darcy allegedly confided to Wilson that she would not advocate for Wilson's return to work for fear she would lose her own job if she did. The Plaintiff does not discuss this conversation further, other than to allege that a committee had been formed by the Hospital's upper management to coordinate the Plaintiff's potential return to work. Allegedly, the Chair of the Hospital's Emergency Department, Darin Wiggins, M.D., was a member of this committee.

## C.     The Plaintiff's Return to Work

Wilson alleges that her period of disability leave was set to expire on April 6, 2013.

On or about March 7, 2013, the Hospital, through its Human Resources Director Vivian Lee, notified the Plaintiff that she could not be returned to her previous position in the Emergency Department before April 6, 2013 because of her inability to access narcotics. In addition, the Hospital notified Wilson that no other appropriate nursing positions would become available by that date.

As noted above, the Plaintiff alleges that these statements were false, as various suitable nursing positions were vacant at that time.

In or about April 2013, Wilson attended a meeting with CNO Darcy and Vivian Lee, at which Wilson was offered a temporary summer position – from May 13, 2013 to September 15, 2013 – as a registered nurse performing admissions and discharges. The Plaintiff accepted this temporary position.

Allegedly, as a precondition of her temporary employment, the Plaintiff was required to execute a return to work agreement (the "Agreement"). In relevant part, the Agreement provided as follows:

> The Terms and Conditions of this Agreement shall remain in force for a period of two (2) years from [April 11, 2013] but are subject to modification if the Employer [the Hospital], in consultation with [the] treatment provider [NYSPAP], decides such modification is in the best interest of the Nurse's rehabilitation or necessary to protect the health and safety of clients/patients. I [Wilson] understand and agree that this Agreement does not obligate the Employer to employ me for a two (2) year period and that, except as provided in the Agreement, I am employed on the same terms and conditions as the Employer's other employees.
>
>      *  *  *
>
> I agree to provide a urine/blood sample* for drug screen, to be obtained in the presence of a qualified witness if the employer has documented reason to believe that I may be unfit for duty. . . . Positive urines will be cause for immediate assessment by my supervisor, Director of Nursing and myself. Relapse will result in termination. I will comply with PAP drug screening requirements at my expense.
>
> *Note: During the course of this agreement, it is understood by the principals that no poppy seed products or herbal supplements will be ingested.
>
>      *  *  *
>
> The nurse will work only on regularly assigned, identified, predetermined units and will not be used for coverage on other units, *e.g.*, "PRN" or "floating" for one year. It is preferred that staff on the unit be knowledgeable and willing to work with a recovering nurse.

On April 11, 2013, Wilson, the Hospital, and a representative of NYSPAP executed the Agreement.

The Plaintiff alleges that she complained to the Hospital that she was being treated unfairly and coordinated with her union representative to obtain reinstatement to a full-time position. She does not specify when such complaints were made or to whom they were directed.

Nevertheless, on May 13, 2013, she commenced her temporary employment.

**D.    The Plaintiff's Positive Drug Test**

On June 17, 2013, the Plaintiff tested positively for opiates. She alleges that the positive test results were attributable to her having ingested tea that was purchased for her in China by a relative. Allegedly, this tea contained an ingredient that created a false positive for opiates.

Wilson alleges that she determined this fact by submitting the tea for testing by an independent laboratory. She did this at her own expense and under the direction of her treating physician. The results of the laboratory's testing allegedly revealed an ingredient that could create false positives for opiates.

According to the Plaintiff, the Hospital refused to consider her explanation; the results of the laboratory's testing; or the results of other negative drug tests administered both before and after June 17, 2013.

**E.    The Alleged Termination of the Plaintiff's Employment**

On an unspecified date, the Plaintiff allegedly was terminated, "effective July 1, 2013." The Court finds this somewhat unclear, as it appears that the Plaintiff continued working past this date.

In fact, Wilson alleges that the Hospital "continued to insist" that she submit a voluntary resignation. In this regard, the Plaintiff alleges that she experienced treatment that she felt was intimidating and designed to pressure her to resign.

On one occasion, while Wilson was discussing her situation with a union representative, Dr. Wiggins, the Chair of the Hospital's Emergency Department, allegedly made a gesture with his hand that simulated shooting a gun at the Plaintiff. She alleges that she took this gesture to mean that Dr. Wiggins "wanted her gone" from the Hospital. The Plaintiff does not allege when this incident allegedly occurred or whether any other Hospital employees or supervisors became aware of it.

In addition, the Plaintiff was allegedly threatened that if she did not resign and waive her legal rights, she would be reported to the State for drug use. Again, the Plaintiff alleges no supporting details regarding these alleged threats.

Allegedly, under the pressure described above, Wilson voluntarily resigned on October 1, 2013. However, on October 4, 2012, she then rescinded her resignation.

Based on these conflicting allegations, it is unclear when the Plaintiff's employment actually ended or what the circumstances surrounding her termination were.

In this regard, the Court cannot clearly discern whether the Plaintiff was terminated or whether she resigned. Similarly, the Court cannot determine whether the Plaintiff's employment ended on July 1, 2013, when she alleges she was terminated; on October 1, 2013, when she voluntarily resigned; or at some point thereafter, because she allegedly rescinded her resignation. In addition, there is no clear indication as to whether, after she rescinded her resignation, some action was taken by the Hospital to terminate her employment.

Allegedly, at some unspecified time thereafter, the Hospital contested the Plaintiff's application for unemployment benefits, contending that she had been terminated for misconduct.

## F. The Additional Facts Contained in the Proposed Second Amended Complaint

As noted above, in support of her cross-motion for leave to further amend her Amended Complaint, Wilson submitted a proposed Second Amended Complaint (the "PSAC"). The PSAC adds the following relevant facts.

In the Amended Complaint, the Plaintiff alleged that, at some unspecified date after January 28, 2013, CNO Darcy stated that she would not advocate for Wilson's return to work for fear she would lose her own job if she did so. The Plaintiff's version of these events changes in the PSAC. In particular, Wilson now alleges that it was the Hospital's "employee health nurse" John Dyer, and not CNO Darcy, who made these remarks to her. According to the PSAC, Dyer expressed to Wilson that "he was afraid of losing his job if he made any effort to get [Wilson] back to work and that he had never dealt with a nurse, like plaintiff, who wanted to

return to work after a disability leave for rehabilitation for substance abuse." PSAC ¶ 26.

Further, in the PSAC, the Plaintiff alleges that, in her capacity as a temporary admitting and discharge nurse, she was not assigned to a single department, but was instead required to "float" between departments, as needed, to admit or discharge patients. According to the Plaintiff, this took place irrespective of whether such departments contained narcotics. In this regard, Wilson alleges that her temporary position violated the restrictions placed upon the conditional reinstatement of her nursing license.

Finally, in the PSAC, the Plaintiff emphasizes that her ingestion of the Chinese tea, which allegedly caused her to test positively for opiates, was inadvertent. In this regard, she alleges that the tea was packaged in a metal tin with writing in Chinese, a language Wilson cannot read.

## G.     The Relevant Administrative Remedies

On or about March 19, 2014, Wilson allegedly filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC Charge").

Although Wilson did not provide the Court with a copy of the EEOC Charge, the Hospital attaches a copy to a declaration in support of the instant motion by Mary Ellen Donnelly, Esq. (the "Donnelly Decl."). Later in this opinion, the Court will analyze the propriety of considering the EEOC Charge in adjudicating the instant motion. However, without expressing an opinion at this time as to that

issue, the Court briefly summarizes certain relevant facts drawn from the EEOC Charge.

In the EEOC Charge, the Plaintiff identified the alleged causes of her discrimination as her age; her gender; and her sexual orientation. In this regard, Wilson stated that she "was discriminated against based upon age, gender and sexual preference . . . in that other employees, including male employees have tested positive for various controlled substances and have not been terminated or suffered negative employment action."

In addition, the Court notes that the EEOC Charge contains various boxes that a complainant may "check" to indicate the alleged cause of their discrimination. One of those boxes states "retaliation." The Plaintiff checked the boxes for "sex"; "age"; and "other", which was later identified by Wilson as sexual orientation. However, Wilson did not check the box for "retaliation."

Of note, in the Plaintiff's EEOC Charge, she failed to raise allegations of discrimination on the basis of a disability, or any allegations of discriminatory retaliation, despite those claims forming a primary basis for the instant action. Also, in the EEOC Charge, the Plaintiff contended that the Hospital's allegedly discriminatory treatment of her was based on her age, in violation of the federal Age Discrimination in Employment Act ("ADEA"). This allegation as to age is not made in this case.

On July 8, 2014, the EEOC issued to Wilson a Dismissal and Notice of Rights letter (the "Right to Sue Letter"). According to the Right to Sue Letter, the EEOC

conducted an investigation and was unable to conclude that the information Wilson provided established violations of the relevant federal employment discrimination statutes. Accordingly, the EEOC notified the Plaintiff that it was closing its file. The Right to Sue Letter advised Wilson that she had the right to commence a lawsuit in connection with her allegations within 90 days of her receipt of the letter.

The Plaintiff alleges that she received the Right to Sue Letter on July 15, 2014, one week after it was issued. She timely commenced this action 84 days later, on October 7, 2014,

On December 17, 2014, the Hospital filed this motion to dismiss the Amended Complaint in its entirety, contending that Wilson's allegations fail to state claims upon which relief can be granted.

## II. Discussion

### A. The Legal Standards

#### 1. The Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

### 2. The Standard for Amending a Pleading under Fed. R. Civ. P. 15(a)

Generally, a party requires leave of the Court in order to amend his or her pleading. <u>See</u> Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." <u>Id.</u>

However, where, as here, the Plaintiff seeks to amend her pleading while a motion to dismiss is pending, the Court " 'has a variety of ways in which it may deal with the pending motion to dismiss, [including] denying the motion as moot [or] considering the merits of the motion in light of the' " PSAC. <u>Schwartzco Enters. LLC v. TMH Mgmt., LLC</u>, 11-cv-1082, 2014 U.S. Dist. LEXIS 160856, at *3 (E.D.N.Y. Nov. 17, 2014) (Spatt, J.) (internal brackets omitted) (quoting <u>Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.</u>, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

Here, the Court finds that the Hospital had an adequate opportunity to respond to the PSAC, and did, in fact, advance arguments in its reply papers addressing the merits of Wilson's motion to amend. Accordingly, the merits of the Hospital's motion to dismiss will be considered in light of the PSAC. <u>See Schwartzco</u>, 2014 U.S. Dist. LEXIS 160856, at *4 (quoting <u>Haag v. MVP Health Care</u>, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012)).

If the PSAC cannot survive the motion to dismiss, then Wilson's cross-motion to amend will be denied as futile. <u>See id.</u> (quoting <u>Haag</u>, 866 F. Supp. 2d at 140); <u>see also Dougherty v. Town of N. Hempstead Bd. of Zoing Appeals</u>, 282 F.3d 83, 88

(2d Cir. 2002) (noting that "[a]n amendment to a pleading will be futile if a proposed claim could not withstand a motion pursuant to Rule 12(b)(6)).

**B.    As to Whether the Court May Properly Consider Evidence Outside the Pleading**

In this case, the Hospital submitted certain documentary evidence, namely, the Agreement, the EEOC Charge, and the Right to Sue Letter, in support of its motion to dismiss.  As a threshold issue, the Court must consider whether it may consider this extrinsic evidence in adjudicating the motion under Rule 12(b)(6).

It is well-settled that "[t]he materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited."  Armand v. Osbourne, 11-cv-4182, 2014 U.S. Dist. LEXIS 23911, at *9 (E.D.N.Y. Feb. 24, 2014).  In fact, "a court considering a . . . motion to dismiss for failure to state a claim generally may not consult evidence outside the pleadings."  Vailette v. Lindsay, 11-cv-3610, 2014 U.S. Dist. LEXIS 114701, at *8 (E.D.N.Y. Aug. 18, 2014).  Rather, in adjudicating such a motion, the Court may only consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Environmental Servs., 7 F. Supp. 2d at 270 (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)).

"'Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion.'" <u>Environmental Servs.</u>, 7 F. Supp. 2d at 270 (quoting <u>Carione v. United States</u>, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)).

Here, the Plaintiff does not contest the Hospital's submission of the documentary evidence outlined above. Nor does she contend that the Court should refrain from considering it. Further, the Court has little difficulty concluding that the Agreement, the EEOC Charge, and the Right to Sue Letter clearly fall within recognized categories of documents that are appropriate to consider on a Rule 12(b)(6) motion.

Initially, the Plaintiff explicitly references each of these documents in the PSAC. Indeed, as discussed more fully below, the EEOC Charge and the Right to Sue Letter form an essential precondition to the Plaintiff's ability to maintain certain claims asserted in this lawsuit. <u>E.g.</u>, PSAC ¶¶ 2, 7, 8 (identifying the EEOC Charge and Right to Sue Letter in connection with this Court's jurisdiction). In addition, the Agreement forms the entire basis of the Plaintiff's breach of contract claim. <u>See</u> <u>id.</u> ¶¶ 34-36 (discussing the Agreement, and quoting its terms); <u>id.</u> ¶ 72 (alleging that the Hospital breached the terms of the Agreement and quoting relevant language); <u>id.</u> ¶¶ 93-101 (asserting a cause of action based on the Hospital's alleged breach of the Agreement).

Therefore, it is clear that these documents are integral to, and incorporated by reference in, the PSAC. <u>See</u> <u>Jean-Louis v. Warfield</u>, 898 F. Supp. 2d 570

(E.D.N.Y. 2012) (Spatt, J.) (finding an Apartment Lease Agreement, which was submitted by the defendant in support of a motion to dismiss, to be incorporated by reference in the plaintiff's complaint, as it formed the basis of the plaintiff's claims); see also Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (observing that a common example of the material properly considered on a 12(b)(6) motion is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls"); Arcari v. 46th St. Dev. LLC, 10-cv-3619, 2011 U.S. Dist. LEXIS 22899, at *9-12 (S.D.N.Y. Mar. 1, 2011) (holding that Termination Agreements not attached to the complaint could nevertheless be considered on a Rule 12(b)(6) motion because they were referenced in the complaint and were directly relevant to the plaintiff's claims).

Accordingly, the Agreement, the EEOC Charge, and the Right to Sue Letter may properly be considered by the Court in resolving the instant motions.

However, the Court notes that the Plaintiff submitted a 59-paragraph affidavit in connection with her response to the Hospital's motion. The affidavit sets forth extensive factual matter, much of which mirrors the allegations in the PSAC. Some of the allegations do not. The Court finds that this affidavit does not fall within the recognized categories of documents that are appropriate to consider on a Rule 12(b)(6) motion, and declines to consider it. See Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc., 12-cv-2285, 2014 U.S. Dist. LEXIS 157806, at *34 (E.D.N.Y. Nov. 6, 2014) (Spatt, J.) (declining to consider affidavits attached to a brief submitted in opposition to motion to dismiss, noting that consideration of such

affidavits would require credibility assessments and weighing of evidence which is inappropriate under Rule 12(b)(6)).

## C. As to the Plaintiff's Causes of Action Based on Gender and Sexual Orientation Discrimination and Discriminatory Retaliation

As noted above, the Plaintiff has withdrawn her claims that the Hospital discriminated against her based on her gender and sexual orientation in violation of Title VII and the NYSHRL. Accordingly, " 'it is appropriate for the Court to dismiss the abandoned claims with prejudice.' " Radin v. Tun, 12-cv-1393, 2015 U.S. Dist. LEXIS 102095, at *70 (E.D.N.Y. July 17, 2015) (Report and Recommendation), adopted, 2015 U.S. Dist. LEXIS 101772 (E.D.N.Y. Aug. 4, 2015) (quoting Allen v. N.Y.C. Hous. Auth., 10-cv-168, 2012 U.S. Dist. LEXIS 130307, at *12 (S.D.N.Y. July 16, 2012) (Report and Recommendation), adopted, 2012 U.S. Dist. LEXIS 130359 (S.D.N.Y. Sept. 11, 2012)).

## D. As to the Whether the Plaintiff Failed to Exhaust her Administrative Remedies as Required under the ADA

The Plaintiff contends that the Hospital discriminated against her on the basis of a disability and retaliated against her in violation of the ADA, the Rehabilitation Act, and the NYSHRL. Before turning to the merits of these contentions, the Court must address a threshold issue raised by the Hospital, namely, whether Wilson sufficiently exhausted administrative remedies relative to these claims prior to asserting them in this lawsuit.

At the outset, the Court notes that Wilson was not required to exhaust administrative remedies prior to bringing her claims against the Hospital under the

Rehabilitation Act. This is because the Rehabilitation Act establishes two distinct remedial schemes: one for bringing claims against federal employers; and another, implicated here, for bringing claims against private employers alleged to receive federal funding. See Ryan v. Shawnee Mission Unified Sch. Dist. No. 512, 437 F. Supp. 2d 1233, 1253-54 (D. Kan. 2006) (cited with approval in Rodriguez v. Int'l Leadership Charter Sch., 08-cv-1012, 2009 U.S. Dist. LEXIS 26487, at *13 (S.D.N.Y. Mar. 30, 2009)). Where, as here, a plaintiff pursues Rehabilitation Act claims against a private employer alleged to have received federal funding, there is no exhaustion requirement. See Rodriguez, 2009 U.S. Dist. LEXIS 26487, at *13; see also Cohn v. Keyspan Corp., 713 F. Supp. 2d 143, 158 (E.D.N.Y. 2010) (collecting cases and concluding that the plaintiff "was not required to exhaust administrative remedies prior to commencing her Rehabilitation Act claim against the [ ] defendants, as alleged recipients of federal funding").

Similarly, there are no administrative perquisites to filing a claim under the NYSHRL. See Manos v. Geissler, 377 F. Supp. 2d 422, 427-28 (S.D.N.Y. 2005) (citing N.Y. Exec. L. § 297(9); Crespo v. New York City Transit Auth., 01-cv-0671, 2002 U.S. Dist. LEXIS 2977, at *30-*31 (E.D.N.Y. Jan. 7, 2002) (noting that the NYSHRL contains no exhaustion requirement); Hernandez v. New York City Law Dep't Corp. Counsel, 94-cv-9042, 1997 U.S. Dist. LEXIS 620, at *30-*32 (S.D.N.Y. Jan. 23, 1997) (same)).

However, as the Hospital correctly points out, exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to

filing a claim in federal court under the ADA. See Cohn, 713 F. Supp. 2d at 155 (citing Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004); Chesney v. Valley Stream Union Free Sch. Dist. No. 24, 05-cv-5106, 2009 U.S. Dist. LEXIS 40616, at *20-*22 (E.D.N.Y. May 14, 2009)).

In fact, a district court only has jurisdiction to hear claims brought pursuant to the ADA that are either: (i) contained in the EEOC charge; or (ii) "reasonably related" to the claims in the EEOC charge. See Agosta v. Suffolk County, 981 F. Supp. 2d 167, 172 (E.D.N..Y 2013) (Spatt, J.) (citing Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998); see Stewart v. United States INS, 762 F.2d 193, 198 (2d Cir. 1985) (noting that "district courts may assume jurisdiction over a claim 'reasonably related' to a charge filed with the EEOC, including incidents occurring after the filing of the EEOC claim") (citing Almendral v. New York State Office of Mental Health, 743 F.2d 963, 967 (2d Cir. 1984); Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2d Cir. 1980)).

The Second Circuit has clarified this "reasonably related" standard. As explained in Ige v. Command Sec. Corp., 99-cv-6916, 2002 U.S. Dist. LEXIS 5612 (E.D.N.Y. Mar. 12, 2002), there are three types of situations where claims not alleged in an EEOC charge are "reasonably related" to those that were contained in the EEOC charge, and are thus properly presented to a district court:

> The first situation is where the conduct complained of "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." The second situation is where a claim alleges retaliation against the employee for filing an EEOC charge. The third situation is where a claim alleges

> "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

Id. at *18-*19 (internal citations omitted).

The parties do not contend that the second or third situations are relevant here. Rather, they limit their dispute to the first situation, namely, whether an investigation into the allegations of age, gender, and sexual orientation discrimination contained in Wilson's EEOC Charge could reasonably be expected to lead to an investigation of disability discrimination and discriminatory retaliation.

The Hospital thinks not. It contends that, because Wilson failed to allege disability discrimination or retaliation in her EEOC Charge, those claims are precluded here.

Wilson disagrees, contending that an investigation into the allegations contained in her EEOC Charge naturally would lead to an investigation of disability discrimination and retaliation.

In the Court's view, the weight of authority favors the Hospital's position. For instance, in the case of Ige v. Command Sec. Corp., supra, the court appropriately applied the "reasonably related" test as follows:

> [The applicable rule] does not encompass claims alleging discrimination on a basis entirely different from that involved in the EEOC charge. Richards v. N.Y.C. Police Dep't, 97-cv-179, 97-cv-5828, 1999 U.S. Dist. LEXIS 722, at *7 (S.D.N..Y Jan. 25, 1999); Peterson v. Ins. Co. of N. Am., 884 F. Supp. 107, 109 (S.D.N.Y. 1995) ("Courts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge."). Plaintiff's alleged claim for discrimination based on national origin is wholly different from a claim of race discrimination. Mathura v. Council for Human Servs. Home Care Servs., Inc., 95-cv-4191, 1996 U.S. Dist. LEXIS 4127, at *4-*5 (S.D.N.Y. Apr. 4, 1996) (a

claim for national origin discrimination is wholly different than a claim of race discrimination), aff'd, 1197 U.S. App. LEXIS 2706 (2d Cir. Feb. 12, 1997); accord Cordero v. Heyman, 97-cv-0435, 1998 U.S. Dist. LEXIS 16289, at *812-*813 (S.D.N.Y. Oct. 19, 1998) [finding "an assertion of racial bias [to be] conceptually distinct from a claim of discrimination based on national origin"]; Navarte v. Chase Manhattan Bank, N.A., 969 F. Supp. 10, 12-13 (S.D.N.Y. 1997) (same). Nothing in plaintiff's complaint filed with the [New York City Human Rights Division] suggests that defendant discriminated against him on account of his race; the charge does not even mention plaintiff's race. In fact, in plaintiff's federal complaint, he specifically states that he filed a complaint with the EEOC alleging discrimination based only upon national origin. . . . Under these circumstances, one cannot say that the scope of the EEOC investigation would reasonably grow into an inquiry concerning race discrimination. The two claims are therefore not reasonably related and the Title VII color and/or race claim is dismissed.

Ige, 2002 U.S. Dist. LEXIS 5612, at *19-*20.

This analysis is applicable here. In the Court's view, discrimination based on age, gender, and sexual orientation is conceptually distinct from discrimination based on a disability. It is also materially different from a claim based on discriminatory retaliation.

Similar to the factual situation in Ige, the Plaintiff's EEOC Charge failed to allege that the Hospital discriminated against her on account of a disability. It also fails to allege conduct on the part of the Hospital that was retaliatory based on her participation in a protected activity. Of importance, when presented with boxes identifying retaliation and disability as potential bases for her administrative complaint, Wilson failed to "check" them. Under these circumstances, the Court cannot conclude that the EEOC investigation into her allegations of age, gender,

and sexual orientation discrimination would have grown into an inquiry concerning disability discrimination and/or discriminatory retaliation.

Additional decisional law in this Circuit is in accord. In <u>Wilson v. Family Dollar Stores</u>, 06-cv-6339, 2007 U.S. Dist. LEXIS 23083 (E.D.N.Y. Mar. 29, 2007), the plaintiff filed an administrative complaint asserting that the defendant had discriminated against her on the basis of disability, sex, age, and had also retaliated against her. She subsequently filed a federal court complaint alleging discrimination based on the different protected classifications of race, color, and religion. The court undertook an analysis to determine whether the allegations of race, color, and religious discrimination asserted in the judicial complaint were reasonably related to the allegations of disability, age, and gender discrimination found in the administrative charge, as follows:

> Courts in the Second Circuit have generally held that "claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." <u>Culbertson v. ChaRosa Found. Corp.</u>, 03-cv-3742, 2004 U.S. Dist. LEXIS 21064 (E.D.N.Y. Oct. 18, 2004). . . . [C]ourts have also typically found that charges of race, color, and religious discrimination are not "reasonably related" to claims of disability and age discrimination. <u>See James v. Federal Reserve Bank of New York</u>, 01-cv-1106, 2005 U.S. Dist. LEXIS 43493 (E.D.N.Y. Aug. 8, 2005) (holding that plaintiff's race discrimination claim was not "reasonably related" to the disability, age and gender discrimination charges she raised before the EEOC); <u>McNealy v. New York Public Library</u>, 96-cv-3023, 1997 U.S. Dist. LEXIS 15014 (S.D.N.Y. Oct. 1, 1997) (holding that ADA disability discrimination claim was not "reasonably related" to race discrimination claim raised in EEOC charge); <u>Sank v. City Univ. of New York</u>, 94-cv-0253, 1995 U.S. Dist. LEXIS 7021 (S.D.N.Y. May 25, 1995) (holding that discrimination claims based on religion, age and disability were to be dismissed because they were not sufficiently related to race, gender and retaliation discrimination claims alleged in the EEOC charge).

Applying these principles, the court in <u>Wilson</u> noted that the plaintiff had made no mention of race, color, or religious discrimination in her administrative charge. Further, there was nothing in the record to suggest that the EEOC could reasonably have been expected to investigate such claims based on the plaintiff's administrative charge, which contained only unrelated allegations of discrimination based on age, disability, and gender. Accordingly, the court dismissed the claims based on allegations which had not been presented to the EEOC, finding them not reasonably related to those that had been identified in the EEOC charge, and thus unexhausted.

The Court finds this reasoning persuasive and similarly concludes that the Plaintiff's claims in this case based on disability discrimination and discriminatory retaliation are not reasonably related to the allegations of age, gender, and sexual orientation discrimination that she presented to the EEOC.

In reaching its conclusion, the Court also takes note of <u>Salerno v. Town of Beford</u>, 05-cv-7293, 2008 U.S. Dist. LEXIS 99373 (S.D.N.Y. Dec. 3, 2008). In that case, the court emphasized that the relevant inquiry is fact-driven and noted that courts should look beyond "the similarity or dissimilarity of the *legal theories* asserted by the plaintiff in the administrative and judicial complaints" and should instead carefully consider "the relationship between the *facts* alleged in the EEOC charge and those asserted in the federal complaint." As the court in <u>Salerno</u> explained, "[t]his makes sense" because "administrative charges in employment discrimination cases are frequently drafted by lay persons, who lack the

sophistication to characterize the treatment they complain of in technical legal terms."

The discussion in <u>Salerno</u> does not alter the Court's reasoning. On the contrary, an evaluation of the facts alleged in the Plaintiff's EEOC Charge fails to support any discernible claim for disability discrimination or discriminatory retaliation.

In the EEOC Charge, the Plaintiff explicitly complained to the EEOC that she is a female; over the age of 40; and a lesbian. She did not allege that she is disabled. In the EEOC Charge, she recounted the circumstances surrounding her termination, and specifically stated that she experienced discrimination due to her of age, gender, and sexual orientation. In fact, she elaborated on this allegation by asserting that similarly situated male employees had not been terminated under comparable circumstances. In the Court's view, these allegations do not set forth a claim of disability discrimination. Nor do they suggest that the Plaintiff was retaliated against for engaging in any protected activity. Accordingly, they cannot reasonably be expected to have led to an investigation of such conduct based on the EEOC Charge.

Based on the foregoing, the Court finds that the Plaintiff's ADA claims "do not qualify for the exception to the exhaustion requirement that permits claims 'reasonably related' to those contained in an administrative charge to be raised for the first time at the district court level." <u>Wilson</u>, 2007 U.S. Dist. LEXIS 23083, *19 (citing <u>Butts v. New York Dep't of Hous. Preservation & Dev.</u>, 990 F.2d 1397, 1401

(2d Cir. 1993)). Therefore, the Hospital's motion, to the extent it seeks to dismiss Wilson's claims under the ADA for disability discrimination and discriminatory retaliation, is granted.

**E.    As to the Plaintiff's Causes of Action Based on Disability Discrimination and Discriminatory Retaliation under the Rehabilitation Act**

The PSAC appears to allege three theories of relief under the Rehabilitation Act: intentional discrimination on the basis of a disability; failure to reasonably accommodate; and discriminatory retaliation.  The Hospital contends that Wilson has failed to state a plausible claim for relief under any of these theories.

The Court will consider each of the parties' contentions more fully below.

**1.    As to Whether the Plaintiff has Stated a Plausible Claim for Intentional Discrimination on the Basis of a Disability Under the Rehabilitation Act**

In this Circuit, in order to state a prima facie claim based on discrimination under the Rehabilitation Act, the Plaintiff must plausibly allege that: (i) she is disabled within the meaning of the Rehabilitation Act; (ii) she was otherwise qualified for her position; (iii) she was excluded solely because of her disability; and (iv) the Hospital receives federal funding.  See Gallagher v. Town of Fairfield, 10-cv-1270, 2015 U.S. Dist. LEXIS 69535, at *15 (D. Conn. May 29, 2015) (citing Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009)); see also D'Amico v. City of New York, 132 F.3d 145 (2d Cir. 1998), cert. denied, 524 U.S. 911, 118 S. Ct. 2075, 141 L. Ed. 2d 151 (1998); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994).

Initially, in the Court's view, the Plaintiff's filings do not explicitly identify an alleged disability that would form the basis of a claim for discrimination. However, for present purposes, the Hospital appears not to contest that Wilson is, in fact, disabled within the meaning of the statute. Thus, the Court assumes that her history of substance abuse and prescription drug addiction qualifies as a covered disability. See Cowan v. Mabstoa, 961 F. Supp. 37, 40 (E.D.N.Y. 1997) (finding, under the facts of that case, that prior substance abuse was a disability under the Rehabilitation Act).

Only the third and fourth elements of this claim are in dispute here. In particular, the Hospital contends: (i) that the Plaintiff has not sufficiently alleged that her termination was attributable solely to her disability, as is required under the Act; and (ii) that the Plaintiff has not sufficiently alleged a federally-funded benefit or program from which she was denied participation due to her disability.

As to the first of these contentions, the PSAC alleges sufficient factual matter to survive a Rule 12(b)(6) challenge. In reaching this conclusion, the Court recognizes that the Rehabilitation Act "is limited to denials of benefits '*solely* by reason of . . . disability." Logan v. Matveevski, 57 F. Supp. 3d 234, 254 (S.D.N.Y. 2014) (quoting 29 U.S.C. § 794(a)) (emphasis added). However, the Court rejects the Hospital's overly rigid interpretation of this language.

In this regard, the Hospital appears to contend that the Plaintiff's claim should be dismissed because she failed to specifically plead that her disability was the "sole" cause of the alleged discriminatory treatment. However, the Court is

aware of no precedent for such an inflexible pleading standard, and the Hospital does not provide any. In fact, in support of its position regarding the appropriate pleading standard, the Hospital cites <u>Flight v. Gloeckler</u>, 68 F.3d 61 (2d Cir. 1995), a case that did not arise in the context of a motion to dismiss a pleading.

In the Court's view, despite Wilson's failure to use the word "solely," the PSAC identifies no possible cause for the complained of discrimination other than her history of substance abuse and addiction. <u>Cf.</u> <u>Logan</u>, 57 F. Supp. 3d at 254 (discussing the Rehabilitation Act's limited scope and noting that the "Plaintiff d[id] not appear to be claiming that he was denied a reasonable accommodation for any reason other than his disability").

The PSAC therefore survives that aspect of the Hospital's challenge.

As to the second contention, the Court notes that Wilson's only allegation with respect to the Hospital's receipt of federal monies is that it "is a Medicaid and Medicare provider and, upon information and belief, receives other federal financial assistance to provide services to the public." PSAC ¶ 14.

In <u>Shalhout v. CVS, Inc.</u>, 11-cv-552, 2011 U.S. Dist. LEXIS 125386 (D. Conn. Oct. 31, 2011), the court strongly suggested that simply alleging that a private employer receives Medicare and Medicaid payments would be sufficient to satisfactorily plead the federal funding element of a claim under the Rehabilitation Act. In <u>Shalhout</u>, a *pro se* plaintiff alleged that he was terminated from his position as a CVS pharmacist due to a hearing disability. The court dismissed his cause of action under the Rehabilitation Act for failure to state a plausible claim. However,

the court expressly permitted the plaintiff to file an amended complaint which would allege *inter alia* "that CVS receives federal funds through receipt of Medicare and Medicaid payments."

Of importance in this case, the Hospital does not deny that it receives federal funding in the form of Medicare and Medicaid payments. Instead, it again seeks to hold Wilson to a heightened pleading standard under which she would be required to specifically identify a federally funded benefit or program from which she was denied participation. However, such an approach has been rejected by other courts.

For instance, in <u>Association for Disabled Americans v. Reinfeld Anderson Family Ltd. Prt.</u>, 12-cv-23798 (S.D. Fla. Apr. 21, 2015), the court noted that, for Rehabilitation Act purposes, "a 'program or activity' is defined as: '[a]ll of the operations of . . . an entire corporation, partnership, or other private organization . . . which is principally engaged in the business of providing . . . health care . . . any part of which is extended Federal financial assistance.' " <u>Id.</u> at *23 (quoting <u>Sharrow v. Bailey</u>, 910 F. Supp. 187, 193 (M.D. Pa. 1995)). Further, the court expressly held that the " '[r]eceipt of federal funding in the form of Medicare and Medicaid payments for the care rendered to any patient brings the treating physician, hospital or medical center within the scope of the Act.' " <u>Id.</u> at *23-*24 (quoting <u>Sharrow</u>, 910 F. Supp. at 193.

The Court finds this reasoning persuasive and finds Wilson's allegations concerning the Hospital's receipt of Medicare and Medicaid payments sufficient to plead the federal funding element of a claim under the Rehabilitation Act.

Accordingly, to the extent the Hospital seeks to dismiss Wilson's claim under the Rehabilitation Act for intentional discrimination on the basis of a disability, its motion is denied.

**2.    As to Whether the Plaintiff has Stated a Plausible Claim for Failure to Reasonably Accommodate Under the Rehabilitation Act**

The Plaintiff can state a prima facie claim based on failure to reasonably accommodate under the Rehabilitation Act by alleging:  (i) that she is an otherwise qualified individual who has a disability within the meaning of the statute; (ii) that the Hospital had notice of her disability; (iii) that, with reasonable accommodation, she could perform the essential functions of the position; and (iv) that the employer has refused to make such an accommodation.  See Smith v. Univ. of New York, 95-cv-477, 1997 U.S. Dist. LEXIS 20782, at *34-*35 (W.D.N.Y. Dec. 31, 1997) (citing Stone v. City of Mount Vernon, 118 F.3d 92, 96 (2d Cir. 1997)).

The Hospital contends that Wilson failed to plausibly allege that she was refused a reasonable accommodation.  In this regard, the Hospital asserts that its creation of a temporary position for the Plaintiff was, itself, a reasonable accommodation, if not the precise accommodation that Wilson desired.

The Hospital relies heavily on this Court's decision in Parisi v. Coca-Cola Bottling Co., 995 F. Supp. 298 (E.D.N.Y. 1998) (Spatt, J.), aff'd, 172 F.3d 38 (2d Cir. 1998).  In that case, the plaintiff was employed by the defendant as a deliveryman. He alleged to have suffered disabling on-the-job knee and leg injuries, which prevented him from performing the essential functions of his position as a

deliveryman. After he recuperated from his injuries, he was still unable to work as a deliveryman, and he sought reassignment to a different position within the defendant's organization – one in which his injuries would not interfere. The defendant declined to offer him a different position.

The plaintiff in <u>Parisi</u> commenced an action under the ADA and NYSHRL, alleging that the defendant had failed to reasonably accommodate his disability by failing to reassign him to a different position. This Court dismissed the plaintiff's claims, finding that he had admitted he could no longer perform the essential functions of a deliveryman and thus was no longer qualified for that position. Further, this Court held that the employer's failure to provide the plaintiff with some "other" unspecified position does not constitute an actionable failure to accommodate under federal discrimination law.

Citing Second Circuit precedent, the Court observed that "[t]here is no general duty to transfer a disabled employee unable to perform one job to another available position, absent some showing – not made here – of a contractual right to transfer or an established policy of such transfers." The Court further held that "an employer need not provide disabled employees with alternative employment when the employee is unable to meet the demands of his present position."

The Court finds <u>Parisi</u> to be distinguishable from the facts in this case. Unlike the plaintiff in <u>Parisi</u>, who simply wanted a new job when he became unable to perform his existing job, Wilson seeks reinstatement to her former position, performing substantially the same essential functions, although in a department

that does not allow for access to narcotics. At this time, the Court expresses no opinion as to whether such positions existed; and if they did, whether they were sufficiently similar to the Plaintiff's previous position to pass muster under the EEOC interpretive guidelines; or whether such positions, assuming they existed, were vacant. Instead, the Court merely holds that <u>Parisi</u> does not dictate the result requested by the Hospital.

In the Court's view, the present case is more closely analogous to <u>Stone v. City of Mount Vernon</u>, 118 F.3d 92, 96 (2d Cir. 1997), which this Court distinguished from the ruling in <u>Parisi</u> as follows:

> In <u>Stone</u>, the plaintiff was a firefighter who suffered an off-duty injury that left him partially paralyzed. Focusing on the essential functions of a "firefighter," the Court of Appeals concluded that there was a factual question as to whether the plaintiff could fulfill the position, precluding summary judgment. In arriving at this decision, the Court emphasized that some "firefighters" were assigned to bureaus that did not require the ability to actively "fight fires," such as the Fire Alarm and Fire Prevention Bureaus. The Court also highlighted that the Fire Department had an established policy of assigning to such "light duty" bureaus employees who were unable to perform regular, "fire fighting" duties because they either were temporarily disabled, or were permanently disabled by on-duty injuries. These facts led the Court to find that there existed a genuine issue of material fact as to whether the plaintiff could have been "reasonably accommodated" in his previous position of "firefighter" by transferring him to one of the light-duty bureaus.

<u>Parisi</u>, 995 F. Supp. at 304 (internal citations omitted).

Of course, this case arises in a different procedural posture than in <u>Stone</u>. As a result, the test is not whether genuine issues of fact exist, but rather, whether Wilson has stated enough plausible facts to make out a claim that she was denied a reasonable accommodation.

In this regard, as in <u>Stone</u>, and unlike in <u>Parisi</u>, the Plaintiff does not allege that she should have been given a new and different position. Rather, she wished to be reinstated as a full-time registered nurse – the same position she formerly held and for which she was allegedly qualified. She alleges that, by offering her a temporary seasonal position, the Hospital did not reasonably accommodate her ability to perform the functions of a full-time registered nurse.

Further, Wilson alleges that some nurses are assigned to work in Hospital departments that do not allow for access to narcotics. She asserts that these positions were vacant at the time she sought reinstatement, but she was denied such a position. The Plaintiff believes that this result was due to her history of substance abuse and prescription drug addiction.

In the Court's view, these allegations contain sufficient factual matter to survive a Rule 12(b)(6) challenge.

Accordingly, the Hospital's motion, to the extent it seeks to dismiss Wilson's claim under the Rehabilitation Act for failure to reasonably accommodate, is denied.

**3. As to Whether the Plaintiff has Stated a Plausible Claim for Discriminatory Retaliation Under the Rehabilitation Act**

To state a claim based on retaliation under the Rehabilitation Act, Wilson is required to plead that: (i) she engaged in protected activity; (ii) the alleged retaliator knew that she was involved in protected activity; (iii) an adverse employment action was taken against her; and (iv) a causal connection exists between the protected activity and the adverse action. <u>See</u> <u>Cheshire v. Paulson</u>, 04-

cv-3884, 2007 U.S. Dist. LEXIS 42633, at *14 (E.D.N.Y. June 12, 2007) (quoting Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 148 (2d Cir. 2002)).

As to the first element, "protected activity" under the Rehabilitation Act has been interpreted to include "not only the filing of formal charges of discrimination, but also the informal protests of an employer's discriminatory practice, such as, 'making complaints to management,' and the request for a reasonable accommodation." Adams v. N.Y. State Thruway Auth., 97-cv-1909, 2001 U.S. Dist. LEXIS 3206 (N.D.N.Y. Mar. 22, 2001) (quoting Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).

In this case, Wilson describes her retaliation claim as follows: "The plaintiff suffered after making her complaints, first being kept out of work, then being offered a position that fell far short of reinstatement, then being terminated less than a month after complaining and reluctantly accepting that position." Appellant's Br. at 15.

From the Plaintiff's own description of her claim, it is clear that the "protected activity" she alleges to have taken is lodging informal complaints. As stated in the PSAC:

> [P]laintiff repeatedly complained that she believed she was being treated unfairly . . . . [PSAC ¶ 35];

> Plaintiff complained that she was unfairly kept from returning to work under the pretext that there were no registered nurse positions available were [*sic*] she would be required to handle narcotics. [PSAC ¶ 38];

> Plaintiff again complained of unfair treatment and attempted to grieve her termination through the union. [PSAC ¶ 61].

In addition, Wilson asserts three employment actions that she contends were causally connected to her complaints. First, she was "kept out of work." Apparently, this relates to Wilson's allegation that, under the direction of CNO Darcy, Dyer made requests to Wilson's treating physician to extend her period of disability, thus delaying her return to work.

Second, she was "offered a position that fell far short of reinstatement." This, presumably, relates to the temporary seasonal nursing position which the Hospital offered to the Plaintiff, and which she accepted following her disability leave.

Third, she allegedly was terminated.

Initially, as noted above, the PSAC does not clarify how or when the Plaintiff's employment with the Hospital actually ended. In this regard, the Plaintiff alleges that she was terminated effective July 1, 2013, but that she voluntarily resigned on October 1, 2013, only to rescind her resignation on October 4, 2013. Thus, in the Court's view, the PSAC fails to sufficiently allege that Wilson was terminated at all, let alone asserting that she was terminated under circumstances indicating a retaliatory motive.

In fact, in the Court's view, Wilson's allegations in this regard are conclusory, contending broadly and without factual support that she was retaliated against because she complained. However, she fails to specify any supporting details concerning the alleged protected activity, including when her complaints were made; their temporal proximity to any alleged adverse employment actions; the individuals to whom they were directed; and what employees of the Hospital, if any,

may have had knowledge of them. Of particular importance, she fails to allege any facts that meaningfully connect her allegations of her informal complaints to the adverse employment actions allegedly taken against her. See Williams v. City Univ. of New York, 10-cv-2127, 2011 U.S. Dist. LEXIS 158422, at *14-*15 (E.D.N.Y. Feb. 10, 2011) (dismissing a claim based on discriminatory retaliation where the plaintiff failed to "allege[ ] any facts that suggest a causal link between his protected conduct and the allegedly adverse action"; finding that "conclusory allegations" such as baldy asserting that the defendant "did these things 'in retaliation' are not sufficient" to pass Rule 12(b)(6) muster).

In this regard, the Court finds that Wilson has not plausibly alleged a claim based on discriminatory retaliation under the Rehabilitation Act. See Garnett-Bishop, 2014 U.S. Dist. LEXIS 157806, at *16 (finding the plaintiffs' allegations relating to discriminatory retaliation "wholly conclusory" where they "d[id] not provide facts, such as who they complained to and when they made the alleged complaints, which could plausibly give rise to an inference that their terminations were a result of retaliatory action by" the defendant); Majeed v. ADF Cos., 11-cv-5459, 2013 U.S. Dist. LEXIS 23958, at *38 (E.D.N.Y. Feb. 20, 2013) ("A complaint that makes only a general conclusory statement that the defendant retaliated against the plaintiff, and that fails to provide any factual detail describing the specific acts of retaliation, when it occurred and which employee of the defendant had knowledge of the plaintiff's protected activity or actually engaged in the claimed retaliation, is insufficient to withstand a motion to dismiss") (citing Saidin

v. New York City Dep't of Educ., 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007));

Edwards v. Elmhurst Hosp. Ctr., 11-cv-5348, 2013 U.S. Dist. LEXIS 32571, at *21-*23 (E.D.N.Y. Feb. 4, 2013) (Report and Recommendation) (finding that, although the plaintiff may have alleged protected activity and an adverse employment action, the complaint "fail[ed] to include any allegations whatsoever to infer a causal nexus between his complaints of discrimination and the alleged adverse action," including "key facts such as when and to whom he complained"), adopted, 2013 U.S. Dist. LEXIS 31790 (E.D.N.Y. Mar. 6, 2013).

Accordingly, to the extent the Hospital seeks to dismiss Wilson's claim under the Rehabilitation Act for discriminatory retaliation, its motion is granted.

## F. As to the Plaintiff's Causes of Action Based on Disability Discrimination and Retaliation under the NYSHRL

Disability discrimination claims under the NYSHRL are analytically identical to those under the Rehabilitation Act. See Nelson v. City of New York, 11-cv-2732, 2013 U.S. Dist. LEXIS 117742, at *17-*18 (S.D.N.Y. Aug. 19, 2013) (citing Gingold v. Bon Secours Charity Health Sys., 768 F. Supp. 2d 537, 543 n.6 (S.D.N.Y. 2011)); cf. Rahman v. Museum of Natural History, 10-cv-921, 2012 U.S. Dist. LEXIS 45658 (E.D.N.Y. Mar. 30, 2012) (finding that the plaintiff's "Rehabilitation Act and NYSHRL claims 'survive[ ] or fail[ ] on the same basis' as her ADA claim").

Thus, the Court's analysis as to the sufficiency of Wilson's pleading with respect to her claims under the Rehabilitation Act applies with equal force to her claims under the NYSHRL. Accordingly, to the extent the Hospital seeks to dismiss Wilson's claim under the NYSHRL for intentional discrimination on the basis of a

disability and failure to reasonably accommodate, its motion is denied. In addition, to the extent the Hospital seeks to dismiss Wilson's claim under the NYSHRL for discriminatory retaliation, its motion is granted.

## G.    As to the Plaintiff's Cause of Action based on Breach of Contract

"To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: '(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages.'" Frontline Processing Corp. v. Merrick Bank Corp., 13-cv-3956, 2014 U.S. Dist. LEXIS 27571, at *5-*6 (S.D.N.Y. Mar. 3, 2014) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)); see Cacchillo v. Insmed, Inc., 551 F. App'x 592, 593-94 (2d Cir. Jan. 7, 2014) (same). "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." Id. (citing Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

The parties do not dispute the existence of a contract. On the contrary, the Agreement is provided in the record and, as described above, the Court, in its discretion, will consider it in adjudicating this aspect of the Hospital's motion.

Rather, the Hospital contends that the Plaintiff has failed to sufficiently plead the second and third elements of a breach of contract claim, namely, that she performed her obligations under the Agreement and that the Hospital breached its obligations. The Court agrees.

As to the first of these contentions, the Plaintiff states that she "duly and satisfactorily performed all of the obligations to be performed on her part pursuant to the terms of the "Agreement." PSAC ¶ 94. In this regard, the parties dispute whether the Plaintiff's ingestion of the Chinese tea constitutes a breach of the contract provisions which states that "[d]uring the course of th[e] agreement, it is understood by the principals that no poppy seed products or herbal supplements will be ingested."

However, the Court needs not reach that issue, as it finds that Wilson's PSAC fails to plausibly allege that the Hospital breached the Agreement.

Initially, as noted above, the PSAC does not clearly allege that the Hospital actually terminated Wilson. However, even if it did, the Plaintiff's contention that such action somehow breaches the Agreement, in the Court's view, is not plausible.

In this regard, Wilson advances two principal contentions. First, she alleges that the Agreement "expressly stated that a positive urine sample would be cause for 'immediate assessment' by her supervisor and the Director of Nursing." PSAC ¶ 35. The provision of the Agreement upon which Wilson relies for this contention reads as follows: "Positive urines will be cause for immediate assessment by my supervisor, Director of Nursing and myself."

Apparently, the Plaintiff construes the term "assessment" to connote a formal investigation into the cause of the positive drug test. In this regard, she states that the Hospital "refus[ed] to perform an assessment of plaintiff's test result before terminating her." Pl. Memo of Law at 17. However, the Court finds that there is

nothing in the plain language of the Agreement to suggest that an "assessment" involves anything more than a reevaluation by the Hospital of the Plaintiff's employment.

This would be consistent with other provisions of the Agreement. In particular, the Agreement states that: (i) Wilson's failure to comply with any of the terms of the Agreement would "be grounds for either additional disciplinary action or possible termination"; (ii) the Hospital is authorized to unilaterally modify the Agreement's terms if such a modification is deemed in the best interest of the Plaintiff's rehabilitation or necessary to protect the health and safety of clients and patients; (iii) the Hospital was not obligated to employ Wilson for the full two-year term of the Agreement; and (iv) Wilson was employed on the same terms and conditions as the Hospital's other employees, which Wilson appears to concede indicates an employment at will. See id. ("Plaintiff does not allege that the defendant did not [have] the right to terminate her employment for any reason at will").

In the Court's view, none of these provisions supports the Plaintiff's expectation that she would be entitled to a formal investigation by the Hospital or a hearing to determine whether she had, in fact, relapsed. On the contrary, these provisions make clear that Wilson was being employed on an at-will basis; that the Hospital retained the singular authority to terminate her employment if it deemed appropriate; and that Wilson's failure to comply with any of the terms of the Agreement could result in her termination.

Under these circumstances, the Plaintiff's contention that the Hospital breached the Agreement by refusing to engage in some procedure beyond merely reassessing whether it wished to continue her employment after her failed drug test is not plausible and fails to state a claim for breach of contract.

Wilson also alleges that the Agreement "expressly stated that in the event of a positive drug test, only relapse would result in termination." Id. Actually, as noted above, the Agreement states that "[p]ositive urines will be cause for immediate assessment by my supervisor, Director of Nursing and myself. Relapse will result in termination." (emphasis supplied).

Wilson's apparent reading of this language, namely, that relapse and nothing else can result in termination, is not apparent from a plain reading of the Agreement. As explained above, the Agreement is clear and explicit in its warning that Wilson's failure to comply with any of the terms of the Agreement "shall be grounds for either additional disciplinary action or possible termination." In the Court's view, the wording of the Agreement is also deliberate with regard to the Hospital's right to terminate Wilson for any reason or no reason at all. In this regard, the Agreement specifically states that the Plaintiff was employed on the same terms and conditions as the Hospital's other employees and that, for example, unsatisfactory performance evaluations may also result in termination.

Accordingly, the Plaintiff's contention that she could only be terminated in the event of a relapse is contradicted by the clear contract language.

Finally, the Plaintiff appears to contend in her motion papers that the Hospital breached the provision of the Agreement which prohibited her from working as a "floating" nurse. As noted above, Wilson alleges that when the Hospital re-hired her as a temporary seasonal employee, she allegedly was not assigned to a single department, but instead "floated" between departments, as needed, regardless of whether she had access to narcotics. According to Wilson, this temporary position therefore violated the restrictions placed upon the conditional reinstatement of her nursing license. Even accepting these allegations as true, the Plaintiff has not identified any harm that she suffered as a proximate result of such a breach. Thus, in the Court's view, she has not plausibly alleged a breach of contract on this basis.

Accordingly, the Hospital's motion, to the extent it seeks to dismiss Wilson's cause of action based on a breach of contract, is granted.

## H. As to Whether the Plaintiff's Cross-Motion for Leave to Amend her Pleading Should be Granted

In light of the foregoing analysis, the Court grants the Plaintiff's cross-motion for leave to file and serve the PSAC, as set forth below.

The Plaintiff shall revise her PSAC to remove those causes of action determined in this opinion to be insufficiently plead, namely: (i) any claims based on gender and sexual orientation-based discrimination and/or discriminatory retaliation; (ii) claims arising under the ADA based on disability discrimination and/or discriminatory retaliation; (iii) claims arising under the Rehabilitation Act and the NYSHRL based on discriminatory retaliation; and (iv) the claim for breach

of contract. The Court finds that these claims, as proposed in the PSAC, to be futile as they cannot survive a Rule 12(b)(6) motion. See <u>Schwartzco</u>, 2014 U.S. Dist. LEXIS 160856, at *4 (if a proposed amended pleading cannot survive a motion to dismiss, the cross-motion to amend will be denied as futile).

In this regard, the Plaintiff is permitted to proceed to discovery only with respect to the following causes of action: (i) intentional discrimination on the basis of a disability under the Rehabilitation Act and the NYSHRL; and (ii) failure to reasonably accommodate under the Rehabilitation Act and the NYSHRL.

## III. Conclusion

Based on the foregoing, the Hospital's motion to dismiss is granted in part and denied in part.

The Court grants the motion and dismisses with prejudice the Plaintiff's claims based on gender and sexual orientation-based discrimination and/or discriminatory retaliation. The Court also dismisses the Plaintiff's claims arising under the ADA based on disability discrimination and/or discriminatory retaliation; her claims arising under the Rehabilitation Act and the NYSHRL based on discriminatory retaliation; and her claim for breach of contract.

The Court denies the motion as to the Plaintiff's claims based on intentional discrimination on the basis of a disability under the Rehabilitation Act and the NYSHRL; and failure to reasonably accommodate under the Rehabilitation Act and the NYSHRL.

The Plaintiff's cross-motion to submit a second amended pleading is granted to the limited extent set forth in this opinion.  The Plaintiff shall file and serve its amended pleading within 20 days of the date of this order.

**SO ORDERED**

Dated: Central Islip, New York
August 28, 2015

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge